No. 84,675

IN THE MATTER OF MARK J. SACHSE, *Respondent*.

(8 P.3d 745)

Opinion filed July 14, 2000.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Mark J. Sachse*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested attorney discipline case filed by the office of the Disciplinary Administrator against Mark J. Sachse of Kansas City, Kansas, an attorney licensed to practice law in Kansas. Two complaints were filed against Sachse, alleging violations of KRPC 1.1 (1999 Kan. Ct. R. Annot. 284) (competence); KRPC 1.3 (1999 Kan. Ct. R. Annot. 294) (diligence); KRPC 1.4 (1999 Kan. Ct. R. Annot. 303) (communication); KRPC 1.5 (1999 Kan. Ct. R. Annot. 312) (fees); KRPC 1.15 (1999 Kan. Ct. R. Annot. 342) (safekeeping property); KRPC 1.16 (1999 Kan. Ct. R. Annot. 352) (terminating representation); KRPC 3.2 (1999 Kan. Ct. R. Annot. 362) (expediting litigation); and KRPC 8.4 (1999 Kan. Ct. R. Annot. 399) (misconduct). The complaint also alleged that Sachse violated Supreme Court Rule 207 (1999 Kan. Ct. R. Annot 223). The Disciplinary Administrator recommended that imposition of discipline be suspended for 2 years during which Sachse be on probation subject to certain conditions.

The formal complaint of the Disciplinary Administrator results from seven client complaints.

## The Prater Complaint

In this personal injury case, Sachse represented Travis Prater, 7 years old. Travis was hit by a car while his family was visiting at the home of a family friend, Rick Moore. On May 20, 1997, Sachse filed a lawsuit in the name of Debbie Prater as mother and next friend of Travis. The petition alleged that the driver of the car, Michael Stacer, was negligent and that Moore, who was supervising

Travis at the time of the accident, was negligent in his supervision. In the petition, Sachse requested that the statue of limitations be extended 8 years pursuant to K.S.A. 60-515(a), allowing a person to bring an action within 1 year of the age of majority but no more than 8 years after the time of the act giving rise to the cause of action.

Sachse testified at the hearing before the panel that he personally served Stacer and Moore with the petition and summons. He acknowledged, however, that there was no return of service as to Stacer or Moore in the district court file.

In October 1997, Stacer answered the petition and filed three discovery requests: interrogatories, request for production of documents, and a statement of damages. Counsel for Stacer, Clifford Mueller, served Sachse with the discovery requests. Sachse did not respond to the discovery requests.

On November 11, 1997, Mueller sent a letter to Sachse, informing Sachse that he would file a motion to compel if the information was not provided. Mueller received no response from Sachse and, on December 5, 1997, he filed a motion to compel discovery. On January 8, 1998, Sachse filed a statement of monetary damages in the amount of $100,000. Sachse made no other response to the discovery requests.

On January 9, 1998, the district court conducted a scheduling conference. Sachse was ordered to respond to Stacer's discovery requests within 10 days. Sachse was also ordered to identify his expert witness and provide the expert's narrative report within 30 days. Sachse failed to comply with the orders and, on February 17, 1998, Stacer moved the court to dismiss the case. The case against Stacer was dismissed without prejudice on April 20, 1998. Sachse failed to appear at the hearing on the motion to dismiss.

A pretrial conference in the Stacer case had been scheduled for June 18, 1998. The Praters rented a car to travel from their home in Abilene to Kansas City for the pretrial conference. When they arrived at the courthouse in Kansas City, they contacted Sachse who met them at the courthouse and apologized for not advising them that the pretrial conference had been canceled. Sachse gave

the Praters $100 for the car rental. Sachse failed to contact the Praters after that date regarding their case.

On October 15, 1998, the Praters complained to the Disciplinary Administrator, describing their frustration at appearing for a court date that had been canceled. They complained that they had called Sachse repeatedly asking for progress reports on the case, but Sachse had failed to respond to their inquiries. The Praters learned from the office of the Disciplinary Administrator that their case against Stacer had been dismissed on April 20, 1998.

In Sachse's answer to the Disciplinary Administrator's formal complaint, he explained that after reviewing the Prater case, he determined that there would be little or no liability on the part of Moore, who had been supervising Travis at the time of the accident. In an effort to maximize damages, Sachse suggested that the Praters wait to see if Travis required further medical attention, which, if the medical expenses increased, might persuade the defendants to settle even with little or no liability on their part.

Sachse stated in his answer to the Disciplinary Administrator's complaint that when Travis did not undergo further medical treatment, he filed a suit to preserve the statute of limitations. Stacer, represented by counsel, answered the petition, and Moore defaulted. Sachse further stated that the Praters had made it clear to him that they did not want to pursue an action against Moore individually. Because Sachse assumed that Moore had no homeowner's insurance and because the Praters did not have the financial resources to incur expenses in the case, he allowed the case against Moore to go unprosecuted. Sachse admitted at the hearing before the panel that he failed to actually ascertain whether Moore had homeowner's insurance.

During the investigation by the Disciplinary Administrator, Sachse requested permission to meet with the Praters. The Disciplinary Administrator permitted the meeting. At the meeting on December 31, 1998, Sachse discussed the prospects of getting judgment against Moore or Stacer. He told them that he had personally served both defendants and had noted that Stacer did not appear to have any resources and that Moore had stated he had no homeowner's insurance. When the Praters expressed disbelief that

Moore had no homeowner's insurance, Sachse asked the Praters for a week to resolve the matter. The Praters never heard from Sachse regarding whether Moore was insured. The Praters testified at the hearing before the panel that at no time did Sachse tell the Praters that their case against Stacer had been dismissed on April 20, 1998.

The complaint filed by the Disciplinary Administrator alleged that throughout the representation of the Praters, Sachse failed to keep the Praters advised as to the status of the case and failed to diligently pursue the matter. Although Sachse disputes some of the facts asserted in the formal complaint, he admits the violations alleged in the complaint.

## *The Laster Complaint*

Code Laster was convicted of first-degree murder in Wyandotte County, Kansas. On April 28, 1997, he was sentenced to life in prison. The Appellate Defender's office was initially appointed on the appeal, and a notice of appeal was timely filed on April 28, 1997. The Appellate Defender's office withdrew from the case in November 1997.

On January 5, 1998, Sachse was appointed to handle Laster's appeal. The deadline for filing the brief was March 2, 1998. Sachse failed to file a brief with the appellate court. On June 25, 1998, Sachse was ordered by this court to show cause why the case should not be dismissed for failure to file a brief. There was no response to the show cause order, and Laster's appeal was dismissed for failure to file a brief.

On February 12, 1999, John Duma entered an appearance on the appeal for Laster. Duma filed a motion to reinstate the appeal due to Sachse's failure to perfect and complete the appeal. The motion was granted.

On October 28, 1998, Laster complained to the Disciplinary Administrator's office. Laster alleged that he had had no communication with Sachse at any time during Sachse's representation. The Disciplinary Administrator filed a complaint, alleging that Sachse failed to competently and diligently pursue the Laster ap-

peal, that he failed to properly communicate with his client, and that Sachse's conduct was prejudicial to administration of justice.

Sachse admits the facts and violations alleged by the Disciplinary Administrator in the Laster complaint. He explains that he intended to complete and file a brief on Laster's behalf, but he had no time to complete the work.

### The Williams Complaint

On August 29, 1998, Sachse was retained by Norma Williams to represent her son, Troy Johnson, in a parole matter. Norma Williams provided Sachse with some documents and paid Sachse a $500 retainer. When Sachse failed to respond to numerous letters from Johnson regarding his parole application, Johnson asked for a refund of the retainer and return of his documents. On November 5, 1998, Sachse left a message with Johnson's father, indicating that he would return the $500 retainer. Johnson's father called Sachse and left a message asking that the check be mailed. Sachse did not return the retainer.

On November 25, 1998, Williams sent a letter to Chair of the Wyandotte County Ethics Committee, complaining that Sachse had not returned the unearned retainer fee. The investigator sent Sachse a letter dated December 31, 1998, requesting a response within 10 days. Sachse did not respond to the letter. The investigator left a message at Sachse's office on January 5, 1999, asking Sachse to respond to the complaint. Sachse failed to respond. An investigative report was submitted to the Disciplinary Administrator's office on January 19, 1999. Sachse again provided a one-page response to Disciplinary Administrator's office on February 17, 1999.

On December 14, 1998, Williams complained to the Disciplinary Administrator. The Disciplinary Administrator notified Sachse of the complaint and urged him to resolve the matter and notify the Disciplinary Administrator's office upon doing so. Sachse made no response to the Disciplinary Administrator.

The Disciplinary Administrator filed a complaint, alleging that Sachse did not handle the matter competently or with diligence,

did not communicate with the client, and failed to return an unearned retainer and documents in his possession.

Sachse stipulated to the facts alleged in the formal complaint and admits the violations alleged by the Disciplinary Administrator.

## The Tillotson Complaint

In late 1995, attorney John Tillotson referred a medical malpractice case to Sachse. The name of the client was Latisha May Thomas. At the time of the referral, Tillotson sent Sachse numerous personal and medical records belonging to Thomas. Tillotson also sent a bill in the amount of $677.50 to Sachse for the medical records he had acquired for Thomas.

Sachse reached a settlement of the case on September 4, 1996, in the amount of $25,000. At the settlement conference, Sachse told Thomas that Tillotson had already been reimbursed for the expenses he incurred in obtaining the medical records. Thomas requested that Sachse return her personal items and medical records, and Sachse agreed. On September 4, 1996, Sachse sent Thomas a settlement statement. The statement showed that Sachse had deducted expenses from the settlement amount, including the $677.50 owed to Tillotson.

Sachse failed to return to Thomas her personal items and medical records, although Thomas made many written and oral requests. Sachse also failed to pay to Tillotson the $677.50 deducted from Thomas' settlement for that purpose.

Tillotson complained to the Disciplinary Administrator and the investigation of the matter ensued. The Disciplinary Administrator then filed a complaint, alleging that Sachse had failed to cooperate with the investigation in that he provided no written response to the complaint as requested by the investigator.

Sachse stipulated to the facts outlined above, except that he denied in his answer to the complaint and at the hearing before the panel that he told Thomas that Tillotson had already been reimbursed for the expenses Tillotson incurred in obtaining the medical records. Sachse admitted the alleged violations.

## The B.C. Complaint

On May 30, 1998, B.C., a minor, was arrested by the Prairie

Village Police Department. The arrest occurred as a result of allegations involving shots fired at passing vehicles. On June 2, 1998, B.C.'s parents retained Sachse to represent their son in any criminal charges brought against him.

B.C.'s parents told Sachse that their son would fully cooperate with the prosecutor and wanted to give a statement to the police as quickly as possible. They also told Sachse that they were going to place their son at Boys Town and wanted Sachse to explore the possibility of a plea agreement or diversion. They were told by Sachse that he would attempt to enter into a plea arrangement after charges were filed and that he would set up an interview with the police pursuant to their request.

Between June 2, 1998, and June 30, 1998, Sachse failed to return B.C.'s parents' telephone calls. On June 30, 1998, B.C.'s parents sent a letter to Sachse which included a $1,000 retainer. In the letter, they requested information regarding the case.

On July 10, 1998, an article appeared in the Kansas City newspaper reporting that charges had been filed against B.C. as a result of the shooting. From July 10, 1998, until July 24, 1998, B.C.'s parents tried to contact Sachse with no success. They faxed another letter to Sachse on July 24, 1998, and Sachse did not respond to the letter. They sent another letter to Sachse on July 29, 1998. Sachse called them in response to the letter and informed them that he was still trying to reach the prosecutor to arrive at a plea agreement.

B.C.'s parents faxed another letter to Sachse on August 14, 1998. In the letter, they complained about a lack of communication with Sachse and requested a response from Sachse in writing by August 17, 1998, setting out how he intended to proceed with the case. Sachse did not respond by August 17, 1998.

B.C.'s initial court appearance was scheduled for September 16, 1998. B.C.'s parents had sent B.C. to live with his sister in Iowa for the summer. B.C.'s parents traveled to Iowa to bring B.C. home for the court appearance. On the evening of September 15, 1998, Sachse called B.C.'s parents and told them he had a court appearance in Wyandotte County the next day, and he had obtained a continuance in B.C.'s case until October 8, 1998.

On October 1, 1998, B.C. was admitted to Boys Town. During the admission process, Boys Town determined that he should not leave Boys Town on October 8, 1998, because on that date he would not have completed his orientation and would not have adjusted to his situation. Upon returning home from Boys Town, on October 5, 1998, B.C.'s parents left a voice mail message at Sachse's office indicating that October 8, 1998, was not a good court date for them because it conflicted with B.C.'s admission into the Boys Town program. In the voice mail message, they asked Sachse to obtain a continuance and inform them of the new court date. There was no response from Sachse to this voice mail message.

On October 8, 1998, Sachse called B.C.'s parents when they were not at home and left a message, informing them that he was on his way to court. Shortly after, Sachse left a second message for them indicating that when they did not appear for court, he was able to "soothe the rather upset judge" and continue the first appearance to November 5, 1998.

On October 12, 1998, B.C.'s parents faxed and mailed to Sachse a demand that Sachse contact B.C., coordinate the court appearance with the Community Director at Boys Town, confirm future court appearances, and advise them if a plea agreement had been reached. On October 17, 1998, they talked to B.C. and learned that Sachse had not been in contact with him.

On October 28, 1998, B.C.'s parents faxed and mailed Sachse a letter discharging Sachse as B.C.'s attorney. On November 5, 1998, Sachse called B.C.'s father and asked if he needed to be at B.C.'s hearing. B.C.'s father told Sachse that he was not needed at the hearing. In the telephone conversation, Sachse volunteered to forward his file to B.C.'s new attorney, determine the amount of time and expenses to be charged against the retainer, and refund any balance to B.C.'s parents. Sachse did not forward any materials to B.C.'s new attorney, provide B.C.'s parents with an accounting of time and expenses spent, or refund any unearned fees.

B.C.'s case was eventually resolved. B.C. pled to two counts of misdemeanor property damage and was placed on probation on

the conditions that he complete his treatment at Boys Town and make restitution.

On November 25, 1998, B.C.'s parents made a complaint to the Disciplinary Administrator. In Sachse's answer to the complaint, he denied the allegations. Sachse stated that in his initial meeting with B.C.'s parents, he explained that B.C. could be charged with a level 4 person felony and that B.C. could be subject to principal liability as an aider and abettor. He advised B.C.'s parents that a level 6 or higher person felony was a presumptive waiver to adult status and that a level 4 person felony carried a presumptive prison sentence of a minimum of 38 months. Because of B.C.'s substantial exposure, Sachse advised B.C.'s parents that B.C. should give a statement to the police only after entering into a plea agreement with the district attorney.

Sachse stated in his answer to the complaint that he spoke with a representative of the juvenile district attorney's office after his initial meeting with B.C.'s parents, who advised him that he would not consider plea negotiations until he had reviewed all the reports on the case. He further advised that upon filing of the charges against B.C., he would not issue a warrant but would set the court date by issuing a summons.

Sachse explained that in late July, the prosecutor filed charges against B.C. and issued a summons and notice to appear. B.C.'s parents were upset by a newspaper article that reported the filing of the charges. At the initial appearance, Sachse spoke with the prosecutor who advised that he would contact Sachse with a plea proposal. Sachse advised the prosecutor that the family had voluntarily placed B.C. at Boys Town.

In Sachse's answer, he outlined the work that he had done on B.C.'s case. His answer states that he received daily telephone messages from B.C.'s parents at the office and often took calls from them at his home. He returned the calls, usually to let them know that he had heard nothing from the prosecutor and would call them when he did.

Sachse's answer related that he obtained a continuance of the initial court appearance because a jury trial he was working on took

longer than expected. He noted that he represented B.C. in juvenile court on September 29 and October 8, 1998.

Sachse noted in his answer to the complaint that he received a plea offer from the district attorney by telephone, and B.C.'s parents were concerned that the offer was not in writing. Sachse advised them that he had worked with the district attorney on numerous cases, and he was trustworthy, but he maintained that B.C. should withhold a statement from the police until the deal was in writing.

Sachse stated in his answer that he had approximately 8 hours invested in the matter at the time he was discharged from the case. He contended that the course of action he followed in the case was in B.C.'s best interest. He admitted in retrospect that he should have drafted detailed letters upon each contact with B.C.'s parents, but doing so would have resulted in a much higher bill. Sachse maintained that he does not owe them a refund. However, at the hearing before the panel, Sachse admitted that he did not keep records of the time he worked on the case and the expenses he incurred. His estimation of 8 hours of time worked on the case was from memory.

### *The Holm Complaint*

Sachse was retained by Craig E. Holm in 1991 to prosecute civil claims made by Holm against his former employer. Sachse filed a petition in Johnson County District Court on December 21, 1993.

On December 19, 1995, summary judgment was granted to the employer individually, but was denied with regard to the employer's corporation. On August 22, 1996, a consent judgment was entered against the corporate defendant. Sachse advised Holm that the defendant corporation had no assets. Holm continued to believe that the corporation had assets which should be pursued.

Holm wrote Sachse two letters, dated September 10 and 29, 1996, complaining about not receiving information from Sachse regarding the case. Again, on October 10 and 20, 1996, Holm wrote letters to Sachse requesting information on his case.

After the October 20, 1996, letter, there were numerous telephone calls between Sachse and Holm. On November 10, 1996,

Holm wrote Sachse stating that he had obtained other counsel to handle his case.

Holm made numerous requests to Sachse to return the documents he had given to Sachse. Eventually Holm's son went to Sachse's office, and Sachse gave him what Sachse described as "all of the file." According to Holm, there were numerous documents which were not returned by Sachse. Holm made a complaint to the Disciplinary Administrator regarding Sachse's lack of communication and lack of progress on the case. Sachse admitted the above facts in his answer to the complaint.

### *The Ketteler Complaint*

Reid Ketteler was injured in an automobile accident on July 16, 1998. At the scene of the accident Reid was asked for proof of insurance by a policeman. He mistakenly produced the wrong insurance information. When the incorrect information was provided to the Department of Revenue, the insurance could not be verified, and Reid's driver's license was suspended.

On September 23, 1998, Reid was driving a friend's car when he was cited for expired tags and a suspended license. Reid was not aware that his license had been suspended. Reid's father, Steven W. Ketteler, advised the Department of Revenue of the situation, and Reid's license was reinstated. Sachse was retained by Ketteler to handle the suspended license and expired tag charge in municipal court.

Reid's initial court date was October 27, 1998. The hearing date was continued a number of times. In December 1998, Sachse advised Ketteler that he had worked out a deal with the prosecutor to plead Reid guilty to illegal parking. Sachse requested that Ketteler send him two checks, each in the amount of $150. One check was made payable to Sachse and the other was made payable to the municipal court. Sachse cashed the check made payable to him.

During the early part of 1999, Ketteler made many telephone calls to Sachse to inquire about the status of his son's case. Only one of those telephone calls were returned and, at that time, Sachse assured Ketteler that all was under control. During the same time period, Reid continued to receive letters from the municipal court

indicating that he had missed court appearances and was in contempt of court, and that a bench warrant would be issued for his arrest.

The case was reset for March 23, 1999. Sachse failed to appear at the hearing and he failed to notify Ketteler or Reid that a hearing was set for that date. A bench warrant was issued for Reid's arrest. Ketteler asked for and received a continuance of the hearing date until April 13, 1999. Ketteler then contacted Sachse again, and Sachse assured Ketteler that he would be in court on April 13, 1999. Prior to the hearing, Ketteler informed the prosecutor about his difficulties with Sachse. On April 13, 1999, the prosecutor called Ketteler after court and advised him that Sachse had not appeared and recommended that Ketteler retain new counsel for his son.

On April 15, 1999, Ketteler wrote Sachse advising him that he had retained another attorney to represent Reid and requested the return of the $300 check. On May 5, Ketteler again wrote Sachse demanding return of the $300. The municipal court matter was promptly resolved by Ketteler's new attorney.

On May 18, 1999, Ketteler wrote a letter of complaint to the Disciplinary Administrator. The unearned retainer fee had not been returned at that time. Subsequently, Sachse refunded $150 to Ketteler. The check which had been made out to the municipal court was never cashed. The check was not returned to Ketteler, and Ketteler was required to pay the expense to stop payment on that check.

At the hearing before the panel, Sachse admitted to the above facts and stipulated that the facts constitute violations of KRPC 1.3, 1.4, and 1.15.

## Conclusions of the Panel

The panel concluded that Sachse had violated KRPC 1.1 (competence); 1.3 (diligence); 1.4(a) (communication); 1.15 (safekeeping property); and 3.2 (expedite litigation). In addition, the panel concluded that Sachse had violated Kansas Supreme Court Rule 207 (cooperation with disciplinary investigation).

The panel concluded that Sachse had violated KRPC 1.1 (competence) in the Prater case by failing to file a return of service and failing to determine whether Moore had a homeowner's insurance policy which might provide coverage for the accident.

The panel's conclusion that Sachse had violated KRPC 1.3 (diligence) is based on its conclusion that Sachse failed to act with reasonable diligence and promptness with regard to each of the seven cases cited in the formal complaint. The panel found that in the Prater case, Sachse failed to respond to discovery requests, failed to appear in court to defend the motion to dismiss, and failed to prosecute the claims against Stacer and Moore. In the Laster case, Sachse failed to prepare and file an appellate brief, failed to respond to the Supreme Court's order to show cause, and failed to preserve Laster's right of appeal. In the Williams' matter, Sachse failed to take any steps toward seeking parole for Johnson, and he failed to timely refund Williams' retainer fee. In the Tillotson matter, Sachse failed to promptly reimburse Tillotson for the expenses associated with obtaining the medical records of Thomas and failed to promptly return Thomas' personal items. In B.C.'s case, Sachse did not act with reasonable diligence and promptness in failing to forward case materials to B.C.'s new attorney. In the Holm matter, Sachse failed to promptly return Holm's documents. In the Ketteler case, Sachse failed to diligently represent Reid by failing to appear in court, failing to contact the municipal prosecutor to reach a plea agreement, and failing to timely return Ketteler's funds.

The panel's conclusion that Sachse had acted in violation of KRPC 1.4(a) (communication) is based on misconduct in each of the seven cases cited in the complaint. While representing the Praters, Sachse failed to keep them informed about the status of the case and failed to promptly comply with reasonable requests for information. In addition, Sachse failed to return telephone calls, failed to notify the Praters that discovery requests had been made, failed to assist the Praters in responding to discovery requests, failed to communicate to the Praters that their appearance was not necessary at the pretrial conference, and failed to notify the Praters that the case against Stacer had been dismissed. Regarding the Laster case, Sachse failed to contact Laster during the 13 months

that he was attorney of record. As to the Williams matter, Sachse accepted the case from Johnson's mother and then failed to contact Johnson regarding Johnson's parole application. Regarding the Tillotson complaint, the client, Thomas, repeatedly requested Sachse to return personal items and medical records, and Sachse failed to promptly comply with the reasonable requests. During the 5 months Sachse represented B.C., Sachse failed to return telephone calls, failed to respond to letters, failed to provide B.C.'s parents with a summary of the representation, and failed to contact B.C. after the initial consultation. Regarding the Holm and Ketteler matters, Sachse failed to return telephone calls or respond to letters written by the clients.

The panel found that Sachse had violated KRPC 1.15 (safekeeping of property) in the Williams matter, the Tillotson matter, B.C.'s case, and the Ketteler case. Regarding the Williams matter, the panel found that Sachse had failed to timely return an unearned retainer fee. In the Tillotson matter, Sachse failed to return personal items and medical records after his client made requests for them. In addition, Sachse kept unauthorized possession for 3 years of $677.50 which was owed to Tillotson for the reimbursement of expenses. In B.C.'s case, Sachse accepted a $1,000 retainer with the understanding that he would charge $150 per hour, and, once the retainer had been earned, Sachse would bill B.C.'s parents for additional time and expenses incurred. The panel found that Sachse had never deposited the retainer in his trust account as required by KRPC 1.15(c). Furthermore, because Sachse never provided B.C.'s parents with an accounting as requested, he had also violated KRPC 1.15 (b). In the Ketteler case, Sachse failed to represent Reid as promised and did not timely comply with Ketteler's request to refund the $300 paid for the representation.

Regarding KRPC 3.2 (expediting litigation), the panel found in the Prater case that Sachse had failed to respond to requests for discovery, failed to defend a motion to dismiss, failed to prosecute the case against Moore, and allowed the case against Stacer to be dismissed.

The panel further found that Sachse had failed to cooperate in the investigations of the Williams complaint and the Tillotson com-

plaint. Based on Sachse's failure to provide responses as directed by the investigators, the panel concluded that Sachse had violated Supreme Court Rule 207.

## Panel Considerations

In making its recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions. Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

In six of the seven complaints against Sachse, the panel found that Sachse's clients or others suffered actual or potential injury: The Praters were injured when they lost their cause of action against Stacer and may have lost their cause of action against Moore. Laster was injured by the delay of 12 months in his direct appeal. Johnson was injured by the delay in his parole application. Johnson's mother, Williams, was injured by Sachse failing to timely refund the retainer she paid on behalf of Johnson. The panel found that without funds to pay a new attorney a retainer, Johnson languished in prison. The panel found that Tillotson suffered financially by having to wait 3 years for Sachse to reimburse him for the medical expenses he incurred in the case he referred to Sachse.

The panel found that although Sachse did perform work for B.C., B.C.'s parents nevertheless suffered harm because of Sachse's misconduct. The panel found that because Sachse did not keep appropriate records and could not establish the time and expenses attributed to the representation of B.C., Sachse should be ordered to return the $1,000 retainer paid by B.C.'s parents. In the Ketteler case, the panel found that Reid Ketteler was faced with significant potential harm when, because Sachse repeatedly failed to appear in municipal court, the court issued a warrant for Reid's arrest.

The panel determined that Sachse had violated duties owed his clients when he failed to competently represent their interests, diligently attend to their cases, and safeguard their property. Ad-

ditionally, Sachse violated a duty to the legal system to expedite litigation. After concluding that Sachse's misconduct was the result of negligent behavior, the panel considered the aggravating and mitigating factors.

## Aggravating Factors

Regarding aggravating factors, the panel found that Sachse had previously been informally admonished for violations of KRPC 1.4 and 1.15(c), and Kansas Supreme Court Rule 207; Sachse engaged in a pattern of misconduct in each of the seven cases failed; this disciplinary case involves multiple offenses; and Sachse has substantial experience in the practice of law.

## Mitigating Factors

The panel found that Sachse's misconduct did not result from a dishonest or selfish motive and that in most of the cases Sachse has made restitution or has indicated a willingness to make restitution or to rectify the consequences of his misconduct. The panel noted, however, that Sachse has not rectified the consequences of his misconduct in the Prater case, as it is not clear whether the Prater's cause of action against Moore remains active. In addition, Sachse continues to owe restitution to B.C.'s parents. The panel found that Sachse had cooperated fully during the course of the hearings and had acknowledged his transgressions. The panel also found that Sachse is an active and productive member of the bar in Kansas City, Kansas, and enjoys the respect of his peers. The panel found that Sachse generally possesses a good character and reputation.

As to mental disability or chemical dependency, Sachse offered evidence he was affected by depression; the depression caused or contributed to the misconduct; and Sachse is recovering from the depression. Sachse testified that he is receiving treatment, and the treatment has arrested the pattern of misconduct.

The panel found that Sachse expressed genuine remorse for failing to communicate with his clients, for failing to diligently and competently represent his clients, for failing to provide requested

information during the course of the investigations, and for violating the Rules of Professional Conduct.

### Panel Recommendation

Pursuant to Supreme Court Rule 203(a)(2) (1999 Kan. Ct. R. Annot. 210), the hearing panel unanimously recommends that the respondent be suspended from the practice of law in the state of Kansas for a period of 36 months. The hearing panel further recommends that imposition of the discipline be suspended and the respondent be placed on probation for a period of 24 months, commencing forthwith upon the following terms and conditions:

1. Sachse's probation shall be supervised by attorney Gerald N. Jeserich, Kansas City, Kansas.

2. Sachse shall meet with Jeserich every other week. Additionally, the respondent shall provide to Jeserich a written summary of each active case as requested by Jeserich.

3. Sachse shall maintain his files in an organized fashion. He shall regularly update his calendar of court appearances and meetings. Sachse shall promptly return telephone calls and respond to written correspondence.

4. Sachse shall restrict his practice to criminal law. All new civil cases are to be referred to other attorneys for handling.

5. Sachse shall follow all treatment recommendations made by his psychologist, William Reese, Ph.D. and his psychiatrist, Harry Stewart, M.D.

6. A majority of the panel would require that Sachse return the $1,000 retainer to B.C.'s parents. Sachse shall compensate Ketteler for the $15 stop payment fee.

7. Sachse shall provide Holm with a detailed letter explaining what occurred during the litigation and all collection efforts undertaken.

8. Sachse shall provide the Praters with a detailed letter explaining the status of the case against Moore and Stacer, including the issue of service of process.

9. If Sachse accepts any funds identified as a "retainer" the funds shall be deposited into Sachse's trust account, as required by KRPC 1.15.

10. Sachse shall obtain and maintain malpractice insurance.

11. Sachse shall provide written evidence of compliance with items 6 through 10 to the Disciplinary Administrator within 20 days of the court's implementation of a probation plan.

12. Jeserich shall review the form that the respondent uses for fee agreements to ensure that the agreement is in compliance with the KRPC.

13. Jeserich shall conduct a monthly review of the respondent's trust account.

14. Jeserich shall provide the office of the Disciplinary Administrator with quarterly reports.

15. Jeserich shall immediately report any violation of this probation plan or any other violation of the KRPC to the office of the Disciplinary Administrator for appropriate investigation and review.

In the event that Sachse violates the terms of probation or engages in additional violations of the KRPC, the hearing panel recommends that the 36 months' suspension run from the date of the violation of the term of probation or new violation of the KRPC. Also, in the event Sachse violates the terms of probation or engages in additional violations of the KRPC, Sachse shall be required to apply for reinstatement following the term of suspension.

Costs are assessed against Sachse in an amount to be certified by the office of the Disciplinary Administrator.

We adopt the panel's findings and find by clear and convincing evidence that Sachse has violated KRPC 1.1, KRPC 1.3, KRPC 1.4(a), KRPC 1.15, and KRPC 3.2, and Supreme Court Rule 207. Under the circumstances of this case, a majority of the court is of the opinion that imposition of discipline against Sachse be suspended and that he be placed on probation for a period of 2 years on the terms and conditions recommended by the panel. A minority of the court would impose a more severe discipline.

IT IS THEREFORE ORDERED that imposition of discipline against respondent, Mark J. Sachse, be suspended and that he be placed on probation for a period of 2 years from July 14, 2000, on the terms and conditions recommended by the panel.

Sachse shall be supervised by Gerald N. Jeserich of Kansas City, Kansas. Jeserich shall be acting as an officer of the court and as an agent of the court as supervisor of probation in monitoring the legal practice of Sachse. Jeserich shall be afforded all immunities granted by Supreme Court Rule 223 (1999 Kan. Ct. R. Annot. 269) during the course of his activities as directed by this order. Sachse shall allow Jeserich access to his files, his employees, his trust account, and his doctors. Jeserich shall act periodically at such intervals as he deems appropriate, or as directed by the Disciplinary Administrator, and monitor the following: (a) the status of each case on Sachse's case list; (b) Sachse's docketing system; (c) Sachse's management of discovery; (d) Sachse's trust account; and (e) the views of the local judges as to their evaluation of Sachse's performance. Jeserich shall provide a quarterly report to the Disciplinary Administrator regarding Sachse's compliance with the terms of probation.

IT IS FURTHER ORDERED that if Sachse fails to abide by the conditions set forth herein, a show cause order shall issue to Sachse, and we will take whatever disciplinary action appears just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that costs herein be assessed to Sachse.